**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70–250–M.**

United States District Court, D. Massachusetts.

May 20, 1986.

Joseph D.S. Hinkley and Linda D. Chase, Peabody & Arnold, Boston, Mass., for Second Mortg. Trustees.

Benjamin H. Lacy, Hill & Barlow, Boston, Mass., for debtor's trustee.

MEMORANDUM

on

*Petition of Successor Trustees Under the Second Mortgage Indenture For Allowance Under Section 77(c)(12)*

FRANK J. MURRAY, Senior District Judge.

The State Street Bank and Trust Company and Daniel Golden, successor trustees under the indenture of mortgage on the properties of the Boston and Maine Corporation, Debtor, request allowance out of the Debtor's estate of compensation and reimbursement of expenses incurred in these reorganization proceedings for services rendered during the period March 12, 1970 through August 31, 1982.

The successor trustees (the "Petitioners") seek allowance of the sum of $111,446.00 for legal services performed for them by their counsel, Peabody & Arnold, and $3,625.60 for disbursements made by their counsel in performing the services. The request for the allowance is pursuant to Section 77(c)(12) [11 U.S.C. § 205(c)(12)][1] of the former Bankruptcy

---

1. The pertinent parts of Section 77(c)(12) on this application for compensation follow:

(12) Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) in-curred in connection with the proceedings and plan by parties in interest ... and *within such limits may make an allowance to be paid out of the debtor's estate for the actual and reasonable expenses incurred in connection with the proceedings and plan and reasonable compensation for services in connection there-*

Act for the actual and reasonable expenses incurred in connection with these reorganization proceedings and plan.

On August 15, 1983 the Interstate Commerce Commission reported to the reorganization court its decision [Finance Docket No. 26115 (Sub-No. 24)] determining the maximum limits of compensation and reimbursement allowable to the Petitioners, pursuant to the Commission's function under Section 77(c)(12). The Commission fixed and approved limits of the allowance to be paid out of the Debtor's estate "a sum not exceeding $115,071.60 (consisting of $111,446.00 for legal services performed and $3,625.60 for various out-of-pocket expenses incurred by counsel)".[2]

Petitioners filed a detailed restated application of the services rendered for which compensation is sought and of the disbursements for which reimbursement is requested, and affidavits of Joseph Hinkley, partner in the firm of Peabody & Arnold. Petitioners' request for the allowance came on to be heard by the reorganization court on the restated application, the affidavits on file, and the statements and arguments of counsel. No objections to the requested allowance was raised at the hearing or called to the court's attention.

The court finds that Petitioners paid to Peabody & Arnold the fees charged by the law firm for services rendered in the reorganization proceedings and reimbursed Peabody & Arnold for their out-of-pocket expenses.

The restated application of the Petitioners (document no. 4772) describes the active participation of the Petitioners through their counsel before the Commission and the reorganization court during the reorganization period March 12, 1970 through August 31, 1982. First-hand knowledge of activities of Petitioners' counsel in the reorganization court on and after November 9, 1973 was acquired by the judge who is considering this restated application. The matters relied upon by the Petitioners may be listed as follows:

(a) Cooperated with Debtor's Trustees in their request to supply commuting services to MBTA.

(b) Supported efforts of the Debtor's Trustees to raise working capital by issue of $14,000,000 of trustees' certificates.

(c) Acquiesced in petitions of Debtor's Trustees to authorize acquisition or leasing of rolling stock and locomotives, by subordinating second bondholders' claim.

(d) Supported request of Debtor's Trustees for authorization of construction of automobile facility in Ayer, Massachusetts.

(e) Participated in support of proposal of Debtor's Trustees to sell commuter lines to MBTA for $39,500,000.

(f) Participated in hearings to retain reorganization proceeding in this court and opposed transfer of all rail properties to Conrail.

(g) Acquiesced in request of Debtor's Trustees to draw down substantial amounts of restricted funds, subject to Petitioners' lien, to support tender offer for first mortgage bonds.

(h) Opposed petition of First Mortgage Trustees and Madison Fund for payment of additional interest on first mortgage bonds.

(i) Acquiesced in request of Debtor's Trustees for drawdown from restricted funds to settle past due and current local tax obligations.

(j) Cooperated in making revolving credit agreement out of collateral held by Petitioners and First Mortgage Trust-

---

*with by trustees under indentures* ... The Commission shall, at such time or times as it may deem appropriate, after hearing, fix the maximum allowances which may be allowed by the court pursuant to the provisions of paragraph (12) of this subsection (c) .... [Emphasis added]

**2.** Petitioners' request for an additional allowance of $15,000.00 for anticipated legal fees and expenses expected to be incurred after August 31, 1982, was denied without prejudice to the filing of a subsequent petition for the allowance.

ees for benefit of Debtor's Trustees to avoid strike.

(k) Acquiesced in drawdown from restricted funds to enable Debtor's Trustees to pay back wages to employees.

(*l*) Participated in the proceedings before the reorganization court (1) to classify creditors' priorities, (2) relative to "per diem claims" and the "six-month claims", (3) settlement of the Northern Railroad claim, (4) the State of New Hampshire taking of Debtor's land, and (5) the Debtor's request for the loan from the Federal Railroad Administration.

(m) Supported proposal of Debtor's Trustees to acquire certain Conrail properties.

(n) Actively participated in proceedings before the Commission and the reorganization court for approval of the plan of reorganization of the Debtor's Trustees.

The issues in the foregoing matters came before this judge in the proceedings in the reorganization court. These matters were important in the progress of the reorganization, and several were critical in ultimate organization. While the Debtor's Trustees and the First Mortgage Trustees were involved simultaneously in seeking to advance these matters to a conclusion, the Petitioners here were conscious of the likelihood of duplication of effort and activity and took steps to avoid such duplication.

As indenture trustees Petitioners were aware of their fiduciary duties to their bondholders, and they were diligent in keeping themselves informed as to all relevant aspects of the Debtor's estate and all phases of the reorganization proceedings. There were activities in the reorganization process on which Petitioners relied on counsel for the First Mortgage Trustees to take the leading role, other proceedings where Petitioners' counsel actively appeared in support of counsel for the First Mortgage Trustees, or acted separately on aspects or phases of the issues involved, other proceedings where counsel opposed the First Mortgage Trustees, and others where counsel opposed both the Debtor's Trustees and the First Mortgage Trustees.

Petitioners' counsel participated before the court on numerous occasions, submitted arguments on the issues involved, and filed briefs. As indenture trustees burdened with the duty to safeguard the security interests of the second mortgage bondholders in the Debtor's property, Petitioners considered carefully the request of the Debtor's Trustees for drawdowns from restricted funds, and the need to balance subordination and possible impairment of the bondholders' security against the likelihood of a successful reorganization. In respect of the tender offer, Petitioners were confronted by opposition from holders of a substantial amount of the second mortgage bonds. On several other occasions holders of second mortgage bonds were critical of the position of the Petitioners on reorganization and urged Petitioners to consider liquidation.

It was Petitioners' view that bondholders were best served by ultimate reorganization. Petitioners encouraged Debtor's Trustees to develop offers to purchase the railroad and Debtor's Trustees acknowledged the assistance toward that goal given from time to time by Petitioners.

The efforts and activities of Petitioners' counsel were directed toward a final reorganization of the Debtor. In that course they furnished unwavering support to the Debtor's Trustees. Their activities were undertaken to protect or increase the value of the Debtor's estate, to decrease the Debtor's indebtedness, to assist the Debtor's Trustees, and to benefit the creditors of the estate. The efforts of the Petitioners and their counsel were of benefit to the second mortgage bondholders, but the effect of their efforts transcended that goal and also was a benefit to the entire estate.

The court has considered the hours expended by Petitioners' counsel, the hourly basis of the fees charged, the fees and reimbursements paid by Petitioners, and the benefit and value to the estate of the

services rendered, and will enter an order granting an allowance to the Petitioners.

## ORDER

After hearing the application of the State Street Bank and Trust Company and Daniel Golden, successor trustees under the indenture mortgage, for allowance out of the Debtor's estate for reimbursement of expenses incurred and reasonable compensation for services rendered, as described in the Memorandum filed herewith, it is hereby ORDERED, ADJUDGED and DECREED:

1. That an allowance of $3,625.60 be made to State Street Bank and Trust Company and Daniel Golden, as successor trustees, for reimbursement of expenses incurred in these reorganization proceedings, and an allowance of $111,446.00 be made to such successor trustees as reasonable compensation for services in connection with the proceedings and plan of reorganization in this reorganization.

2. That payment to State Street Bank and Trust Company and Daniel Golden, as successor trustees, of the allowances herein authorized shall be pursuant to the Consummation Order of the court entered June 17, 1983, and the Supplements thereto.

WITNESS The Honorable Frank J. Murray, Judge of the District Court and the Seal thereof at Boston, Massachusetts, this 20th day of May 1986.